UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

IN RE:

FRED CLIFTON CRANEY, JR.                              Chapter 7
SUZANNE MICHELE CRANEY

    Debtors.                                 Bankruptcy No. 05-04638S

WIL L. FORKER, trustee

    Plaintiff

vs.                                                   Adversary No. 08-9111S

FRED CLIFTON CRANEY, JR.
SUZANNE MICHELE CRANEY

    Defendants.


MEMORANDUM DECISION
COMPLAINT TO REVOKE DISCHARGE

Trustee Wil L. Forker seeks revocation of each debtor's discharge. Trial was held June 11, 2009 in Sioux City. Forker appeared on his own behalf. Donald H. Molstad appeared as attorney for Fred Craney, Jr. and Suzanne Craney, the debtors. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).


Findings of Fact

Craneys filed their joint chapter 7 petition on September 20, 2005. Forker was appointed trustee. Craneys received their discharges on January 4, 2006.

Fred Craney is 47 years old. He has a Graduate Equivalency Diploma, or G.E.D. certificate. For the past six years he has

worked as a forklift operator.  Suzanne Craney graduated from high school, and thereafter attended one year of college in California.  She was unemployed at the time of filing bankruptcy, but she is now a production worker at a formal wear rental business.  Also, she receives a small, variable amount of income twice a year from Sealaska Corporation, a business owned by Native Alaskan tribes.  She is a member of one such tribe.  Mrs. Craney was primarily responsible for keeping the couple's checkbook records for their Wells Fargo checking account.

On their schedule of personal property, debtors listed Mr. Craney's ownership interest in a "private annuity."  The schedule showed that as of August 8, 2005, Mr. Craney was entitled to 17 more monthly annuity payments.  The monthly payments of $324.38 were deposited directly in the Craneys' joint bank account at Wells Fargo Bank.

The annuity had been purchased in 1997 from American General Life Insurance Company by American General Annuity Service Corporation (AGASC) to fund the latter's assigned obligation to comply with a structured settlement agreement in favor of Mary I. Cox, Mr. Craney's mother.  In October 1997, Mr. Craney became entitled to a one-eighth share of the remaining periodic payments after the death of his mother.

Neither of the debtors claimed Mr. Craney's right to receive the remaining annuity payments as exempt.  See Fed.R.Bankr.P.

2

4003(a) (time for debtor or dependent to claim exemptions).  At the time they filed their case, both debtors were aware that Mr. Craney's right to receive the periodic annuity payments was property of the bankruptcy estate.

Craneys understood that Forker would contact the payor to receive the payments after the bankruptcy filing.  Forker began his efforts to contact the payor in March 2006 (exhibit 4, p. 6), but he had difficulty contacting the correct entity or in obtaining responses (exhibit 4, pp. 1-6).  On September 6, 2006, he filed an adversary proceeding against American General Life Insurance Company seeking turnover of the remaining annuity payments (exhibit 6).  The proceeding resulted in a consent order being entered in adversary proceeding 06-9144 in which American General Life Insurance Co. was directed to pay Forker $324.38 per month from October 1, 2006 through February 1, 2007 (exhibit 7).  Five of the payments were apparently later paid in a lump sum (exhibit 5).

Nonetheless, from September 20, 2005, the date of the bankruptcy filing, to October 1, 2006, twelve annuity payments were deposited in Craneys' joint bank account.  These deposits totaled approximately $3,893.00.  Craneys were aware that they were not entitled to use the funds, and that they were part of the bankruptcy estate.  But they were still having cash flow problems.  Mr. Craney testified that after they filed bankruptcy

and during the time the annuity payments were still being deposited in their account, their bills outweighed what he was earning. The couple did not keep accurate records of their check payments, and the account was charged with numerous overdrafts.

Nonetheless, the Craneys knew the annuity payments continued to be deposited in their account, and they knew they were spending the money from the account. They made no effort to transfer funds to Forker. Mrs. Craney testified that they intended to pay Forker but the money was not there to pay him--they just could not afford it. In trying to resolve the trustee's complaint, Craneys have paid him $700.00. Notwithstanding such testimony, I find that each of the Craneys knowingly and fraudulently failed to surrender or deliver the annuity payments to the trustee.

## Conclusions of Law

Forker seeks revocation of the discharges granted under 11 U.S.C. § 727(a) pursuant to 11 U.S.C. § 727(d)(2), which states:

> [o]n request of the trustee ... and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section, if
> ...
>    (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee....

11 U.S.C. § 727(d)(2).

I find and conclude that each of the debtors acquired property that was property of the estate and that they knowingly and fraudulently failed to deliver or surrender such property to the trustee. Their discharges will be revoked.

IT IS ORDERED that judgment shall enter that the discharges of Fred Clifton Craney, Jr. and Suzanne Michele Craney are revoked.

DATED AND ENTERED  June 15, 2009

William L. Edmonds, Bankruptcy Judge